## EARLE v. COYLE.

(Circuit Court of Appeals, Third Circuit. November 14, 1899.)

### No. 9.

BANK STOCK—TRANSFER—ASSESSMENT.

Title of C. to stock in a bank is devested, so as to relieve him of liability for an assessment levied four years thereafter, on the bank becoming insolvent, where he employed auctioneers to sell it, and put into their hands his stock certificate, having indorsed thereon an assignment in blank, and a power of attorney in blank to transfer the stock, duly executed by him, and they knocked down the stock to S., who was cashier of the bank, and took the certificate to the banking house, and delivered it to S., "as cashier" of the bank, and requested him to transfer the shares to the purchaser thereof; and this, notwithstanding a by-law of the bank that "no officer * * * shall, without permission of the directors, hold stock in the bank,"—the inference from the payment of semiannual dividends to S. for the four years being that the bank had accepted him as a stockholder.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Asa W. Waters, for plaintiff in error.

Rudolph M. Schick, for defendant in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This was an action brought, pursuant to an order of the comptroller of the currency, by George H. Earle, Jr., receiver of the Chestnut Street National Bank, against Caroline Coyle, executrix of D. Lynn Coyle, deceased, to recover an assessment of 100 per centum upon the par value of five shares of the capital

stock of the bank, of which shares, it was alleged, the defendant, as said executrix, was the owner for the purpose of the assessment. The facts upon which the question of the defendant's liability as executrix to pay this assessment is to be determined appear in a case stated, submitted to the court below. Upon the agreed facts, that court, following the decision of the supreme court in Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61, gave judgment for the defendant. (C. C.) 95 Fed. 99.

It appears that on February 13, 1894, D. Lynn Coyle was the owner of five shares (of the par value of $100 each) of the stock of the said bank, for which he held the usual certificate. He employed Barnes & Lofland, auctioneers in the city of Philadelphia, to sell this stock at public auction, and he put into their hands his stock certificate, having indorsed thereon an assignment in blank, and a power of attorney in blank to transfer the stock, duly executed by him. The bank was then in good credit, and Coyle had no reason to doubt its continued solvency. On the named day (February 13, 1894), the stock was put up at public sale by the named auctioneers, and was knocked down at the price of $100 a share, its par value, to William Steele, who paid the purchase price in hand. William Steele was then the cashier of the bank, and the auctioneers supposed he was purchasing for William M. Singerly, the president of the bank. The case stated sets forth that "Barnes & Lofland, on the said 13th day of February, 1894, took the said certificate, indorsed as aforesaid, to the banking house of the said bank, delivered it to the said William Steele, as cashier thereof, and then and there requested him to transfer the said five shares of stock to the purchaser thereof, and left the said certificate with him." On the same day the auctioneers paid the amount for which the stock had sold, less their charges, to Coyle, who never knew who had bought the stock, and supposed from that time on that it was duly transferred to the purchaser on the books of the bank. He died on February 17, 1897. The bank suspended payment of its obligations and failed on December 23, 1897, and thereupon, by order of the comptroller of the currency, was declared insolvent, and a receiver appointed. The case stated sets forth that "the said bank declared dividends semiannually to the said five shares of stock after the said 13th day of February, 1894, and paid the same to William Steele." It appears from the case stated that William Steele bought this stock for himself, but made no transfer thereof to himself on the books of the bank, and that the stock remained in the name of D. Lynn Coyle on the stock ledger.

A by-law of the bank provided that "no officer of the bank, except the president and vice president, shall, without the permission of the directors, hold stock in the bank." The court below, we think, was right in holding that the facts of this case bring it directly within the ruling of the supreme court of the United States in Whitney v. Butler, supra. The essential facts of that case are all present here. The conduct of D. Lynn Coyle and his auctioneers seems to have been "that of careful, prudent, business men," within the definition of the supreme court in Whitney v. Butler, where a like course

of action by the vendors of national bank stock was held to relieve them from future liability to assessment. Here the auctioneers took the certificate of stock, with the indorsed assignment in blank, and power of attorney for transfer in blank, to the banking house of the bank; and there "delivered it to the said William Steele, as the cashier thereof," with the express request that he transfer the stock to the purchaser. Thus, upon the agreed facts, it appears that the auctioneers dealt directly with the bank, at its place of business, its cashier being in charge, and admittedly acting in his official capacity in accepting the surrender of the certificate of stock. Furthermore, the bank was not only in good credit at the time of this transaction, but its failure did not occur until nearly four years afterwards. During the interval the bank declared dividends semiannually on this stock, and the case stated shows that these dividends were paid by the bank to Steele.

As to the controlling facts, this case differs as much from Richmond v. Irons, 121 U. S. 27, 58, 7 Sup. Ct. 802, as that case differs from Whitney v. Butler. The difference between these two cited cases appears in the following quotation from the opinion of the supreme court in Richmond v. Irons, where, speaking of that case, the court said:

"The case is not within the rule laid down in Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61. Here there is no proof, as there was in that case, of the delivery of the certificates to the bank, and a power of attorney authorizing its transfer, with a request to do so, made at the time of the transaction. The delivery was to Holmes, not as president, but as vendee."

Here it is conceded that the delivery was to Steele, "as cashier."

We think that the court below was right in holding that the by-law above cited did not take this case out of the decision in Whitney v. Butler, even if the knowledge of the auctioneers as to who bid off the stock is imputable to Coyle, and he is also to be regarded as visited with constructive notice of the by-law. It will be perceived that the by-law did not forbid the cashier to purchase stock, and it did not absolutely prohibit him to hold stock, but only forbade his holding stock without the permission of the directors. Now, under the circumstances attending this transaction, it might well have been assumed that the cashier was acting in conformity with the rules of the bank, and not in violation of them. There was nothing to excite a suspicion of irregularity, if any existed. Moreover, the payment by the bank to Steele of the semiannual dividends for a period of over three years justifies the inference that the directors had given Steele permission to hold this stock. Snyder v. Foster, 19 C. C. A. 406, 73 Fed. 136. It is a perfectly legitimate conclusion, from the agreed facts, that the bank had accepted Steele as stockholder in respect to these five shares.

We need only add that our decision in this case accords with the views and ruling of the circuit court of appeals for the Fifth circuit in the case of Snyder v. Foster, supra. The judgment of the circuit court is affirmed.