### EARLE v. CARSON.

(Circuit Court of Appeals, Third Circuit. March 12, 1901.)

#### No. 29.

NATIONAL BANKS—STOCKHOLDERS SUBJECT TO ASSESSMENTS — TRANSFER OF SHARES IN GOOD FAITH.

An owner of shares in a national bank, who sold the same in good faith, without knowledge or reason to believe that the bank was insolvent, and who did everything that was reasonably possible to have the proper formal transfer made on the books of the bank, cannot be treated as a shareholder, and held liable to an assessment made by the comptroller upon the subsequent closing of the bank as insolvent, upon evidence showing that the bank was in fact insolvent at the time the sale was made, and that the purchaser was also insolvent. The statute imposes no restriction upon the right to transfer shares because of the insolvency of the bank or the transferee, nor do considerations of public policy justify it where the seller has exercised due diligence, and has acted in the transaction with fairness and good faith.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

Charles Biddle and Asa W. Waters, for plaintiff in error.
Richard C. Dale, for defendant in error.

Before GRAY, Circuit Judge, and McPHERSON and BRADFORD, District Judges.

J. B. McPHERSON, District Judge. This suit is brought by the receiver of an insolvent national bank to enforce the double liability of a shareholder. The bank was closed and the receiver was appointed on December 23, 1897, and upon that day the name of the defendant appeared upon the official list of shareholders as the owner of 10 shares of the capital stock. Prima facie, therefore, she was liable for the assessment that was afterwards levied by the comptroller of the currency; but she met this apparent liability (successfully, as the verdict shows) by offering evidence at the trial to prove that on December 2d she had sold her shares in good faith, without knowledge or suspicion that the bank was either then insolvent, or was likely to prove insolvent, and that she had done everything that was reasonably possible to procure a transfer of the shares on the books of the bank to the purchaser. Under several decisions of the federal courts, if the evidence established these facts, a complete defense was presented to the receiver's claim. Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 61, 30 L. Ed. 266; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; Earle v. Coyle, 38 C. C. A. 226, 97 Fed. 410; Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571. Recognizing the probability that the defense would be successful, the receiver attempted to reply to it by offering to prove in rebuttal that the bank was insolvent on December 2d as well as on December 23d, and that the purchaser of the shares was also insolvent at the time the sale was made to him. This evidence was objected to as immaterial, unless the receiver should offer to follow it by proof that the defendant had knowledge of the insolvency of the bank and of the insolvency of the purchaser; and, as the receiver was unable thus to follow the offer, the learned judge excluded the testimony. It should be noted that neither in the court below nor in this court was it contended that the evidence was offered upon the question of the defendant's good faith. Her ignorance of the insolvency and her good faith were conceded, and the receiver's purpose was merely to raise the question that is immediately to be stated and considered. Manifestly, if the evidence had been offered to affect the defendant's good faith, it would have been insufficient, without other evidence from which her knowledge of the bank's insolvency might fairly be inferred.

It is the exclusion of this rebuttal testimony that is complained of under the only assignments of error that need be discussed. The question presented is this: In what sense does the double liability of a shareholder in a national bank become fixed when the bank becomes insolvent in fact? Is it either fixed absolutely, so that no transfer, in good faith or otherwise, to any purchaser whatever, can afterwards be made that will relieve the shareholder? Or is it so far fixed that no valid transfer can be made, even in good faith, if the purchaser be insolvent? The plaintiff in error has referred us to cases decided in several states under their respective constitutions and statutes that seem to support his contention concerning the nature and time of maturity of a shareholder's liability. These decisions hold that the liability is fixed, either absolutely

or sub modo, by the fact of insolvency; but we do not discuss them, because the national banking act and the decisions of the supreme court of the United States have established a different rule in respect to shares in a national banking association. Section 5139, Rev. St., provides that such shares shall be transferred on the books of the bank as the by-laws may prescribe, and that "every person becoming a shareholder by such transfer shall in proportion to his shares succeed to all the rights and liabilities of the prior holder of such shares." This provision has been so enlarged by the decisions already cited that a shareholder is enabled to rid himself of his rights and liabilities by less than a transfer in fact. He will satisfy this section if he is able to prove that he sold in good faith, and that he did everything that was reasonably possible to procure the proper formal transfer on the books of the association. There is no restriction in the banking act forbidding transfer after the bank has become insolvent, or forbidding transfer to an insolvent person at any time; and, if these restrictions on the right to sell are to be enforced, it is because they are imposed by the courts in obedience to considerations of public policy, or in accordance with the general principles of justice and fair dealing that are applied to test any given transaction, although no statute may have enacted these principles as rules of decision.

What answer, then, do the principles of justice and fair dealing lead us to give to the question now before the court? We think the answer should be this: As congress has imposed no restriction on the right to sell, and as the duty to transfer has been held to be fulfilled by a proper, even if an unsuccessful, effort to transfer, the seller is bound simply to diligence, fairness, and good faith in the transaction. He is not bound at his peril to know that the bank is insolvent, or that the proposed purchaser of his shares is insolvent. He is bound to take notice of any fact that may reasonably put him on inquiry concerning the insolvency of the bank or of the purchaser, and to use diligently the means of knowledge at his disposal. If he knows, or has reasonable ground to believe, that the bank is insolvent, it would be a fraud if, with intent to evade his own liability, he should sell his shares, even to a solvent person; and both the receiver of the bank and the purchaser would find a court of equity ready to afford them proper redress. So, also, if with similar knowledge of the bank's insolvency, or with reasonable ground for belief, a shareholder should sell to a person whom he knew to be insolvent, this would be presumably misconduct of the same nature. Such a sale could rarely withstand attack by, or on behalf of, the persons injured; for the apparent inference of intent to evade the statutory liability would almost inevitably be drawn. But why should the unknown fact that the bank is insolvent destroy the statutory right of transfer, if the transfer is made in good faith? In our opinion, no principle of justice or fair dealing forbids such transfer, for by the very assumption the transfer is bona fide, and in ignorance of the bank's insolvency; and the seller is therefore seeking no unfair personal

107 F.—41

advantage, but is merely exercising innocently an apparent statutory right.

Neither, as we think, is the transfer under such circumstances forbidden by public policy. In the case of a transfer to a solvent purchaser, no consideration for the creditors of the bank demands that the sale be forbidden; for between two solvent persons it is of no importance to the creditors upon which person the assessment may be levied. If the transfer be made to an insolvent person, then, although the transaction may be in good faith, no doubt the creditors of the bank are injured; but, if it is sought to prevent the possibility of doing such an injury by a ruling that such transfers are invalid,—and such a ruling must rest upon the ground of public policy, and not upon the ground that the ignorant and innocent shareholder has violated any principle of justice or fair dealing,—we think it would be very difficult to apply the rule of policy consistently. The reason for such a decision could only be that, as the bank's creditors have, by the mere fact of the bank's insolvency, become entitled to enforce the double liability, a shareholder ought not to be allowed, even by an act done ignorantly and in good faith, to render a part of the creditors' security unavailable by a transfer to an insolvent person. We see no other ground on which the ruling could be sustained, and this ground seems to us unsatisfactory for the following reasons: First. The reason being that harm to the creditors should be prevented, an irresponsible shareholder ought to be permitted to transfer to another irresponsible person; for, in that event, the creditors would suffer no harm, and no reason would exist for restricting the statutory right to sell at will. Second. The reason, if sufficient, ought logically to be extended so as to strike down transfers to insolvent persons made while the bank was solvent, as well as to be applied to transfers made after it had become insolvent; for the same harm is done to creditors in the one case as in the other, and in both cases a withdrawal of the statutory security ought, upon the assumption, to be prevented. Third. The rule would, or at least might, involve inquiry into the solvency of three persons,—the seller, the purchaser, and the bank; and the inconvenience of such an inquiry in each of many possible suits is entitled to weight in determining the applicability of the rule. Fourth. In every litigated case the question of the bank's solvency, at least at a particular date before its doors were closed, would be in issue; and, as this question is one of fact for the determination of a jury, it is readily conceivable that, either because the amount of evidence was not the same in every case, or because different juries were disposed to take different views of the same facts, there would be conflicting verdicts concerning the bank's solvency at substantially the same instant of time. Fifth. To apply such a rule would, in the language of defendant's counsel, "introduce into all transactions an element of uncertainty; for every transaction would be subject to review, even though made in good faith, if it subsequently proved that at the date when the transfer was made the bank, if then liquidated, would have proved insolvent, and that the transferee, if called upon

to pay at that day all his debts, would have been unable to respond."

To our minds, these are reasons enough for hesitating to adopt the rule that has been urged upon us. It has no authority to support it, if we except a dictum in Stuart v. Hayden, 169 U. S. 1, 18 Sup. Ct. 274, 42 L. Ed. 639. In that case the principal point decided was that a fraudulent transfer of shares, made after the seller knew of the bank's insolvency, and made also for the very purpose of evading the statutory liability, was invalid against the creditors of the bank; and that the receiver could pursue the seller as if the attempted sale had not been made. The learned justice who delivered the opinion of the court, after discussing and deciding this point, went on to say:

"If the bank be solvent at the time of the transfer,—that is, able to meet its existing contracts, debts, and engagements,—the motive with which the transfer is made is, of course, immaterial. But, if the bank be insolvent, the receiver may, at least, without suing the transferee and litigating the question of his liability, look to those stockholders who, knowing or having reason to know at the time that the bank was insolvent, got rid of their stock in order to escape the individual liability to which the statute subjected them. Whether—the bank being in fact insolvent—the transferror is liable to be treated as a shareholder in respect to its existing contracts, debts, and engagements, if he believed in good faith at the time of transfer that the bank was solvent, is a question which, in the view we take of the present case, need not be discussed; *although he may be so treated, even when acting in good faith, if the transfer is to one who is financially irresponsible.*"

It is upon the italicized clause of this quotation that the plaintiff in error relies; but we think the clause is so obviously a remark by the way that it cannot possibly be taken as a serious decision of a point which in the same breath the learned justice says "need not be discussed." It may also be true that the language is to be understood in the sense suggested by the brief of defendant's counsel. The suggestion is, in substance, this: The clause merely means that the seller may be treated as still a shareholder, if the transfer is to a person who is financially irresponsible; that is to say, from such a transfer the inference may be drawn, having due regard to the facts of the particular case, that the transaction was intended to be evasive, and in that event the seller will continue to be a shareholder even if he made a transfer out and out, with no secret arrangement that he was at some future time, or in some future contingency, to have the stock again, or to enjoy its profits, —in other words, even if he made such a transfer as the English cases speak of as a transfer in good faith, the good faith consisting in the fact that the transfer is absolute, and without reservation. Whether this suggestion be correct, we have no means of knowing. The language of the court, however, is certainly a dictum; and if it means what the plaintiff in error declares it to mean, with great respect we must decline to follow it.

There is no need to discuss the assignments of error in detail. They present nothing that calls for further attention.

The judgment of the circuit court is affirmed.