## PAUL C. KEYES, AS RECEIVER OF THE FIRST NATIONAL BANK OF CLARKFIELD, MINNESOTA, v. THEODORE MYHRE AND OTHERS.[1]

### June 27, 1919.

### No. 21,328.

**Bank — transfer of stock — liability of seller for stock assessment.**

*Held*, following the rule stated and applied in Whitney v. Butler, 118 U. S. 655, that defendants neglected no duty resting upon them to cause and effect a transfer of stock in the national bank in question, which they had sold in good faith, and that they are not liable for a stock assessment made in insolvency proceedings three years after such sale.

Action in the district court for Yellow Medicine county to recover $1,000, the amount of an assessment upon the bank stock of M. T. Myhre. The answer alleged that prior to March 1, 1914, defendants sold and assigned the stock in question to George J. Piersol. The case was tried before Daly, J., who made findings and as conclusions of law found that by the sale and transfer of the stock Piersol became the owner of the same, and defendants were not liable for the assessment. Plaintiff's motion to amend the findings and conclusions was denied. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*J. N. Johnson*, for appellant.

*C. A. Fosnes*, for respondents.

BROWN, C. J.

The facts in this case as disclosed by the findings of the trial court are substantially as follows:

The First National Bank of Clarkfield, this state, was duly organ-

[1]Reported in 173 N. W. 422.

143—M. 13

ized as a national bank under the Federal statutes, its charter having been issued on October 1, 1902. From that date until declared insolvent in September, 1918, it carried on and conducted a general banking business at the location stated. When so adjudged insolvent plaintiff was duly commissioned as receiver to wind up its affairs. The assets of the bank were insufficient to pay and discharge the debts and liabilities in full and an assessment of 100 per cent was duly levied upon the stockholders.

At the time of or soon after the organization of the bank, one M. T. Myhre became a stockholder therein, and two certificates of stock of $500 each were issued and delivered to him. He continued to own and hold the same until his death, which occurred on the fourteenth day of April, 1913. By his death the title and ownership of the stock, with other property of which he died seized and possessed, passed to his widow and children. The widow died on December 27, 1913, leaving as sole heirs to the Myhre estate, including the bank stock, defendants in this action, who are the sons and daughters of the decedents, and who received from the estate more than the amount of the stock assessment.

The stock was sold by defendants on February 27, 1914, to George J. Piersol, who from the organization of the bank to the time of the adjudication of insolvency was the cashier and at all times engaged in the active charge of its affairs. The executor of the estate of Mrs. Myhre joined in the sale. The sale was made in good faith, in the usual course of such transactions, and the bank was then solvent and a going concern. The consideration was $1,200, which Piersol paid at the time. The certificates of stock were properly indorsed by the defendants and the executor and delivered to the cashier, together with a blank power of attorney printed on the back thereof and above the signatures of defendants, authorizing a transfer on the books of the bank, and they at all times since remained at the bank and in its vault with other papers belonging to the bank and to the cashier.

Although the sale and delivery of the stock to the cashier took place some three or more years prior to the insolvency of the bank, no transfer thereof was ever entered on its books, and at the time of the insolvency Myhre still appeared on such books as the owner of the same. Yet

defendants were at no time thereafter treated by any officer of the bank, so far as the record discloses, as having any interest therein.

This action was brought by the receiver to recover the amount of the stock assessment, on the ground that, since there was no transfer of the stock on the books of the bank, defendants as heirs of the estate are liable as the real owners. Defendants had judgment and plaintiff appealed.

Defendants are presumptively liable, for there was no transfer of the stock upon the books of the bank. Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. ed. 571. But they may interpose the sale of the stock in defense, and a showing of a good faith transaction, even though not registered on the bank books, will relieve them from liability, unless the conclusion necessarily follows from the facts stated that they neglected some duty arising from the situation to cause and bring about a proper entry of the changed ownership. If there was no neglect on their part in that respect they are not liable, for they are not the real owners of the stock, and were not such owners at the time the bank became insolvent. Whitney v. Butler, 118 U. S. 655, 7 Sup. Ct. 47, 30 L. ed. 266; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. ed. 864; Snyder v. Foster, 73 Fed. 136, 19 C. C. A. 406. We think and so hold that the facts bring the case within the rule applied in Whitney v. Butler, just cited, and therefore that the trial court properly gave judgment for defendants.

It appeared in that case that the stock there involved was sold by a broker who, as agent of the selling stockholder, presented the stock certificates properly indorsed with a power of attorney authorizing and providing for a transfer on the books of the bank to the president thereof at the banking house, where they at all times thereafter remained. No objection was made to the transfer nor to the form of the authority to make the same, or intimation given out by the president that an entry thereof would not be made. No transfer was in fact made, however, and the selling stockholder remained the owner of record at the time the bank was later adjudged insolvent. The court held that the selling stockholder had done all that should reasonably be required of him in such case and he was held not liable.

In the case at bar the sale of the stock was in good faith and for val-

ue paid at the time. The certificates were delivered to the purchaser, who happened to be the cashier of the bank, properly indorsed with a power of attorney authorizing a transfer on the bank books. The certificates, so indorsed thereafter remained at the bank in a safety deposit box in which were kept papers and documents belonging to the bank and also papers and documents belonging to the cashier. The situation so continued for over three years with no suggestion by any officer of the bank that a transfer was withheld for any reason, nor were defendants advised that a proper transfer had not been made, nor in any way thereafter treated as stockholders or as having any interest in the bank; no dividends were paid them. Although defendants made no specific demand that the cashier enter the transfer on the books, that fact should not be held to expose them to liability. It was the duty of the cashier to make the transfer and the situation presented no reasons suggestive to defendants that he would either neglect or refuse to perform the same. A formal request would have added nothing in protection of the rights of others, and the burden of the default of the cashier should not be cast upon them, for they are entirely innocent of any intentional omission of anything necessary to completely divest them of all evidence of title or ownership of the stock.

The case cannot well be distinguished in point of substance from the Whitney case. Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. ed. 864, is distinguishable in its facts. See Snyder v. Foster, 73. Fed. 136, 19 C. C. A. 406.

Judgment affirmed.