## DELLERT v. STALLMAN.

Circuit Court of Appeals, Seventh Circuit.
November 23, 1928.

No. 4076.

Logan Hay, of Springfield, Ill., for appellant.

Ralph F. Lesemann, of East St. Louis, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. This is a suit at law to recover from appellee an assessment made by the Comptroller of Currency against him on the theory that he was the owner, within the meaning of sections 63 and 64, title 12, of the United States Code Annotated, of 10 shares of stock, standing in his name on the books of the National Bank of Jerseyville, Ill., when it failed on January 5, 1927. A jury was waived in writing and the court's finding was for the defendant.

On January 12, 1926, appellee, with three associates (and holding a proxy for a fourth), attended the annual stockholders' meeting of the bank at Jerseyville. Appellee and his four associates lived in or near Waterloo, Ill., and owned 10 shares each of the bank's stock. After the meeting, there was some talk about the smallness of the bank's deposits, and Heller, the cashier, said that it was in part due to the fact that the stock was widely scattered and held at places away from Jerseyville. As to what then followed there is one version stated by appellee and witnesses called by him, and another by persons who were present at least a part of the time and called by appellant. The substance of the first version is that Heller made an offer of par for the 50 shares, which was accepted; that Heller was told that the stock was hypothecated with the First National Bank of Waterloo, and would have to be transferred; that Heller then gave instructions to send the stock to the Jerseyville bank and he would "take care of it from then on." The other version is that Heller only said: "If you will send the stock to the bank I will try to sell it for you at par."

Regardless of which is the true version of the talk, it appears that Heller, as cashier up to his death, on the day the bank closed, was actively engaged in the conduct of the bank's business, and that Cochran, the president, and Spangle, assistant cashier, knew that the certificates were to be sent to the bank, either on a sale to Heller, or were to be sold for the then owners; that when the parties returned to Waterloo they told Schmidt, the cashier of the Waterloo bank, that they had sold their stock to Heller; and that, pursuant to instructions, Schmidt sent the certificates through the mail to the Jerseyville Bank in the following letter, viz.:

"Agreeable to the instructions of the owners we enclose the following certificates of stock of your bank:

Certificate No. 157 C. H. Koenigsmark..... 10 shares
Certificate No. 158 J. C. Bertram........... 10 shares
Certificate No. 159 E. F. Stallman.......... 10 shares
Certificate No. 160 W. H. Burkhardt........ 10 shares
Certificate No. 161 Harry E. Jackson...... 10 shares

"According to their statement you are to make remittance to us in the amount of $5,000.00 in payment of the above certificates of stock, same being duly indorsed in blank and the several signatures properly witnessed.

"Thanking you for your prompt attention to the matter, we are,

"Very respectfully,
"J. F. Schmidt, Cashier."

Cochran, the president, testified that that letter, with the certificates inclosed, was received by the bank. On appellee's certificate was indorsed:

"For value received, ——— hereby sell, assign and transfer unto ——— ——— shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ——— ——— attorney to transfer the said stock on the books of the within named corporation with full power of substitution in the premises.

"E. F. Stallman.
"Dated ———, 19—.
"In presence of J. F. Schmidt."

In payment for the shares, the National Bank of Jerseyville sent its draft for $5,000, signed by Heller, as its cashier, on a St. Louis bank, to the Waterloo bank. Whose money paid for the stock does not otherwise appear. There was no transfer of the stock

on the books of the bank. There were no transfer tax stamps on the certificates, nor were any sent with the certificates to the Jerseyville bank.

In argument, appellant ignores the version given by his witnesses, namely, that there was no sale to Heller, and, relying upon the version that shows a sale to Heller, bases his first contention upon the proposition that, as the sale was a personal one to Heller, Heller's agreement to see to the transfer of the stock upon the books of the bank was an undertaking to do something in his individual capacity, and not as cashier, and he could not, therefore, represent the bank so as to make the bank chargeable with his knowledge or bound by his promise to make the transfer. Reliance is based on 2 Thompson on Corporations (3d Ed.) p. 1116, § 1521:

"The general rule is well settled that an officer cannot act for the corporation in a matter in which he is personally interested, and hence cannot bind the corporation by contracts made with other parties in which he has a personal interest, in cases where his own interest and the interests of the corporation may conflict."

We are of opinion that this rule has no application here because we can see no possible theory, deducible from the record, upon which there could have been a conflict between Heller's interests and those of the bank, involved in the transfer of that stock upon the books.

Appellant, in argument, admits there is no claim that any element of fraud entered into the transaction. In the main, appellant relies on Richmond v. Irons, 121 U. S. 27, 57, 7 S. Ct. 788, 30 L. Ed. 864. In that case, the court considered itself not bound by Whitney v. Butler, 118 U. S. 655, 7 S. Ct. 61, 30 L. Ed. 266, because of differences found in the facts. Those things listed as not shown in the Irons Case were said to be present in the Butler Case. To show this dissimilarity between the Irons Case and the instant case, we parallel the two:

| Irons Case. | Instant Case. |
|---|---|
| 1. No proof of delivery of certificate to bank. | 1. Proof of delivery of certificate to bank. |
| 2. No proof of delivery of power of attorney. | 2. Proof of delivery of power of attorney. |
| 3. No proof of agreement for transfer. | 3. Proof of agreement to transfer. |
| 4. Delivery was to Holmes, not as president but as an individual. | 4. No delivery to Heller, but to bank. |

Certainly, the differences are so great between the Irons Case and the instant case upon the matters that constrained the court there to charge Comstock with liability that we do not think that the Irons Case supports appellant's contention.

Whether the stock was sent to the bank for delivery on a sale to Heller, or was sent to the bank to be sold for account of appellee, we deem immaterial. Besides Heller, the assistant cashier and the president knew it was sent to the bank for sale, and the president knew of the receipt of the letter with the certificates of stock, properly indorsed for transfer, inclosed, so that the knowledge of what was being done or was to be done was not confined to Heller, and the matter of notice rested upon fact, and not upon a presumption merely from knowledge had by Heller.

Without going into a discussion of the Butler Case, supra, we are of opinion that it should control here. See, also, Snyder v. Foster (C. C. A.) 73 F. 136, 142; Foster v. Row, 120 Mich. 1, 19, 79 N. W. 696, 77 Am. St. Rep. 565; Apsey v. Whittemore, 199 Mass. 65, 85 N. E. 91, 93; Keyes v. Myhre, 143 Minn. 193, 173 N. W. 422.

Appellant urges that, because no stamps were placed upon the certificates or upon the transfer books of the bank, as provided in the Revenue Act of 1924 (title VIII, Schedule A, par. 3, 43 U. S. Stats. at Large, p. 334; title 26, § 901 (3), U. S. Code Annotated) there was no obligation upon the bank to make the transfer. Under that act, the failure to affix stamps in no way invalidated the transactions. Cole et al. v. Ralph, 252 U. S. 286, 293, 40 S. Ct. 321, 64 L. Ed. 567. It is quite evident, from the record, that failure to attach stamps was not done with any intent to evade the tax. When Burkhardt, one of the owners and sellers of the stock, and who had been a bank examiner, raised the question as to how the transfer was to be made, Heller directed that the stock be sent to the Jerseyville bank and he would take care of it from then on. The sale of the stock was really in the interest of the bank. When the bank received the stock and paid for it without any demand for transfer stamps it was, under the evidence in this case, legally obligated to do everything to make the transfer effective and protect appellee.

The judgment is affirmed.