George C. HOUCK, Jr., Appellant,

v.

H. I. HINDS, Individually and as Collector of Internal Revenue, Appellee.

No. 4797.

United States Court of Appeals
Tenth Circuit.

Aug. 20, 1954.

Rehearing Denied Oct. 8, 1954.

James D. Fellers, Graham Loving, Jr., Oklahoma City, Okl. (Mosteller, Fellers, Andrews & Loving, Oklahoma City, Okl., were with them on the brief), for appellant.

Ellis N. Slack, Sp. Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., George F. Lynch, Sp. Asst. to the Atty. Gen., Fred M. Mock, U. S. Atty., and Leonard L. Ralston, Asst. U. S. Atty., Oklahoma City, Okl., were with him on the brief), for appellee.

Before BRATTON, HUXMAN and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

This is an income tax case. In his return for the year 1946, George C. Houck, Jr., hereinafter referred to as the taxpayer, treated as capital gain the

amount of $1,250 received from a corporation in which he was a shareholder. The Commissioner of Internal Revenue determined that the amount thus received should be treated as a dividend distribution made by the corporation. A deficiency in tax resulted. The deficiency was paid, a claim for refund was seasonably lodged, no action was taken on the claim within six months after the date of its filing, and the suit was instituted against the Collector of Internal Revenue to recover a refund, together with interest. Liability was denied.

The trial court found these facts. Beginning about May 31, 1943, the taxpayer became a partner in a paint manufacturing and distributing business in Tulsa, Oklahoma, operating under the name of Allied Paint Company, a limited partnership. The names of the partners and their respective interests were Ainslie Perrault, 55 per cent; Raymond M. Gunn, 17½ per cent; Arthur T. Saunders, 12½ per cent; Robert E. Stanford, 12½ per cent; and George C. Houck, Jr., 2½ per cent. Perrault was a general partner and the others were limited partners. On September 21, 1946, L. Karlton Mosteller, a partner in the firm of Mosteller & McElroy, engaged in the practice of law at Oklahoma City, organized Allied Paint Manufacturing Company under the laws of Delaware. On September 24, the incorporators of the corporation held a meeting in the offices of the law firm at which time Mosteller and his associates, George H. McElroy, and Richard G. Taft, were elected directors. On October 1, the first meeting of the directors was held in the offices of the law firm. Mosteller was elected president, McElroy vice-president, and Taft secretary-treasurer of the corporation; by-laws were adopted; and the form of stock certificates was approved. At such meeting, Mosteller subscribed for the entire authorized capital stock of 10,000 shares at $5 par value per share, paid into the corporation $1,000 for 200 shares, and executed an agreement to purchase the remaining 9,800 shares in the amount of ·$49,000. And at such meeting, Mosteller announced that he had completed negotiations for the purchase by the corporation of the assets of the partnership for the price of $582,-773.54. That was not in excess of the fair market value of the assets. The book value of the assets as of September 30 was $325,584.55. In accordance with Mosteller's announced negotiations for the purchase of the assets of the partnership, a bill of sale was executed on October 1 between the partners as vendors and the corporation as vendee. The part of the bill of sale concerning payment provided that the vendee promised to pay a total consideration of $582,773.-54, of which $50,000 should be paid on December 31, 1946, and the balance should be paid in ten equal annual installments on January 2 of each of the years 1948 to 1957, inclusive, the corporation having simultaneously with the execution of the bill of sale delivered to the vendors its notes evidencing its promises to pay such consideration totalling the sum of $582,773.54 at the times and in the manner therein provided, and the vendors thereby acknowledging receipt of such notes. The corporation executed such notes to the several partners as follows:

|  | Notes Due 12–31–46 | 10-Year Installment Notes | Total |
|---|---|---|---|
| Ainslee Perrault | $27,500 | $293,025.45 | $320,525.45 |
| Raym ond M. Gunn | 8,750 | 93,235.37 | 101,985.37 |
| Arthur T. Saunders | 6,250 | 66,596.69 | 72,846.69 |
| Robert E. Stanford | 6,250 | 66,596.69 | 72,846.69 |
| George C. Houck, Jr. | 1,250 | 13,319.34 | 14,569.34 |
|  | $50,000 | $532,773.54 | $582,773.54 |

The notes due December 31, 1946, did not bear interest. The installment notes bore interest at the rate of three per cent per annum from December 31, 1946. To secure the installment note payable to Perrault, the corporation agreed to and did on October 1, execute a combination real estate and chattel mortgage covering all of its newly acquired assets; and at the same time it was agreed that the corporation would, not later than one year thereafter, purchase and maintain a policy or policies of life insurance of not less than $125,000 on the life of Perrault and pledge such policy or policies as collateral security for the payment of his installment note. Mosteller's principal purpose in entering into such transaction was, with Perrault handling the negotiations and finding a purchaser, to sell the corporate assets or his stock in the corporation at a profit. Perrault was to be paid an undisclosed commission for arranging the prospective sale. The transaction was entered into bona fide between the parties for legitimate business purposes; and from October 1 to October 18, 1946, Mosteller had complete control of the corporation through his ownership of all issued stock and his subscription agreement for the balance of the authorized stock. As of October 1, Mosteller had no agreement with Perrault and his associates to sell them his stock at any future time.

On October 17, 1946, Mosteller concluded that there was no reasonable prospect that a sale of the corporate assets or of the stock in the corporation owned by him could be consummated within the then immediate future, and he advised Perrault that he had decided to dispose of his stock immediately. Thereupon, Perrault entered into an agreement with Mosteller to purchase his 200 shares of stock for $1,000 and to assume his subscription agreement to purchase the remaining 9,800 shares of the authorized stock. On October 18, Perrault delivered to Mosteller his check for $1,000 in payment of the 200 shares of stock; and on the same day a special meeting of the stockholders of the corporation was held, at which the stockholders present were the same individuals who had been partners in the partnership. Perrault acted as chairman of the meeting and the taxpayer as secretary. The original officers submitted their resignations and Perrault, Gunn, and Saunders were elected directors. Perrault advised the others present that he had purchased the 200 shares of stock held by Mosteller and, acting for himself and the others present, had assumed Mosteller's obligation to purchase the balance of the authorized capital stock. His action was ratified and the new stockholders subscribed for shares of stock, the shares subscribed and the par value being as follows:

|  | Shares | Par Value |
| --- | --- | --- |
| Ainslie Perrault | 5,300 | $26,500 |
| Raymond M. Gunn | 1,750 | 8,750 |
| Arthur T. Saunders | 1,250 | 6,250 |
| Raymond E. Stanford | 1,250 | 6,250 |
| George C. Houck, Jr. | 250 | 1,250 |

The new stockholders' proportionate interests in the stock of the corporation was the same as their proportionate interests in the partnership had been. Pursuant to its obligations evidenced by its notes, the corporation paid $50,000 to the holders of the notes maturing December 31, 1946, such persons being then its stockholders. The payments included payment to the taxpayer of $1,250. The earned surplus and undivided profits of the corporation as of September 30, 1947, the end of its first fiscal year, totalled $155,839.69. After making findings of fact substantially as thus outlined, the court in its conclusions of law determined that since the original purpose of the formation of the corporation, that is, a sale of the stock or assets by Mosteller to third parties, was abandoned and the

corporate stock transferred to the partners in exact proportion to their interest in the partnership, the sale of the partnership assets to the corporation by the partners and their succession to ownership and control of the corporation was in legal effect a single transaction and was in substance a transfer of such assets to the corporation in exchange for stock or securities of the corporation, and immediately thereafter the partners were in control of the corporation. Judgment was entered against the taxpayer, and he appealed.

■ The taxpayer challenges the judgment on the ground that the court erred in holding that the $1,250 which he received from the ·corporation constituted a dividend distribution and was subject to tax as such. The argument in support of the contention is that the court committed error in concluding that the sale of the partnership assets to the corporation by the partners, and their succession to ownership and control of the corporation, was in legal effect a single transaction and was in substance a transfer by them of the assets of the partnership to the corporation in exchange for stock and securities of the corporation. It is said in substance that after finding as a fact that the transaction consummated on October 1, and the transaction concluded on October 18, were separate and distinct transactions, there was no basis in law for the conclusion of the court that the several dealings between the parties were in legal effect a single transaction, the substance of which was a transfer of the assets of the partnership in exchange for stock and securities of the corporation, with the partners being immediately thereafter in control of the corporation. Whether for tax purposes several acts constitute separate and distinct transactions or are integrated steps in a single transaction is a question of fact. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981.

■■ Where a finding is in substance one of fact or one upon a mixed question of fact and law, it will be treated as such even though found in the conclusions of law made by the trial court. Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 183 F.2d 355. And in like manner, a conclusion of law or a conclusion upon a mixed question of law and fact will be treated as such even though designated by the trial court as a finding of fact. State Farm Mutual Automobile Insurance Co. v. Brooks, 8 Cir., 136 F.2d 807, certiorari denied 320 U.S. 768, 64 S.Ct. 80, 88 L.Ed. 459.

■■ While found in the conclusions of law, the determination of the court that the several steps taken by the parties constituted a single transaction, the substance of which for tax purposes was the transfer of the assets from the partnership to the corporation in exchange for stock and securities of the corporation, was in substance and effect a finding of fact or a finding upon a mixed question of fact and law. And inasmuch as the record brought here by the taxpayer does not contain the evidence adduced upon the trial, it must be assumed that all of the material findings of fact are supported by substantial evidence, unless they are in irreconcilable conflict. We fail to perceive any irreconcilable conflict between the material findings to which reference has been made. Even though at the time the transactions of October 1 and October 18 occurred, the parties acted in good faith and intended them to be separate and distinct transactions, since their collective and proximate result was a transfer of the assets of the partnership to the corporation in exchange for stock and securities of the corporation, and since the partners were immediately thereafter in control of the corporation, the transactions were in substance and effect for tax purposes a single transaction which reached its ultimate consummation and conclusion in that manner. Cf. Commissioner of Internal Revenue v. Court Holding Co., supra.

Section 112(b) (5) of the Internal Revenue Code, 26 U.S.C.A. § 112(b) (5), provides in substance that no gain or

loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities of the corporation, and immediately after the exchange such person or persons are in control of the corporation. The assets of the partnership having been transferred to the corporation solely in exchange for stock and securities of the corporation, and the partners having been immediately thereafter in control of the corporation, no capital gain accrued therefrom to the taxpayer.

In the absence of a showing to the contrary, it can be assumed that the funds with which the corporation made the payments to the shareholders, including the taxpayer, came from earnings or surplus which the partnership transferred to the corporation or from earnings or surplus accumulated by the corporation. In either event, the payment to the taxpayer constituted for tax purposes a dividend distribution, even though upon its payment the note was extinguished.

The judgment is affirmed.