GUS RUSSELL, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 84188. Filed September 12, 1961.

*John A. Darsey, Esq.,* for the petitioner.
*Robert B. Milsten, Esq.,* for the respondent.

FORRESTER, *Judge:* Respondent has determined the following deficiencies in income tax of petitioner:

| Fiscal year ending April 30— | Amount |
|---|---|
| 1956 | $12, 481. 69 |
| 1957 | 14, 767. 19 |
| | 27, 248. 88 |

The only question remaining before us is the basis of certain assets owned by petitioner; said basis is dependent upon whether said assets were acquired by petitioner in a tax-free exchange under section 351.[1]

FINDINGS OF FACT.

Some of the facts have been stipulated and are so found.

Gus Russell (hereinafter referred to as Gus) is an individual, who for many years had been engaged in the typesetting and composition business in Atlanta, Georgia.

In April 1950, Gus contemplated retiring from this business. Several of his employees then conceived the idea of purchasing his assets over a period of time in order to continue operation of the business.

[1] Unless otherwise noted, all Code references are to the Internal Revenue Code of 1954.

Accordingly, in April 1950, they organized Russell Composition Company, Inc. (hereinafter referred to as Composition). Gus owned no stock in Composition and had no connection with its management. After the formation of Composition, all of its shareholders continued to work for Gus as they had theretofore.

Since Gus was looking forward to retirement he did not want to invest further capital in his business after April 1950, and consequently Composition bought certain heavy machinery and leased it to him for such use.

On April 1, 1950, Gus granted Composition an option to buy his business assets. The option could be exercised 5 years after date (i.e., April 1, 1955) and would then remain open for 30 days. The option provided a method for determining the price at which Gus' assets were to be transferred to Composition. It also provided that Gus was to accept preferred stock of Composition as payment for his assets.

On March 29, 1955, Composition's board of directors resolved to exercise the option and so notified Gus. At this point, Gus sought the advice of tax counsel and was advised by such counsel that, were Composition to exercise the option under its existing terms, he (Gus) would be obliged to report substantial long-term capital gains on his 1955 Federal income tax return. Counsel suggested that Gus and Composition both transfer their respective assets to a newly formed corporation with the transferors each receiving stock in exchange, and advised that the transaction would then qualify as a tax-free exchange under section 351, thereby delaying any tax consequences as to Gus.

Gus advised Composition's officers of this plan and, at Gus' suggestion, a meeting of Composition's stockholders was called to consider it. At the meeting, Gus and his attorneys made explanations to Composition's directors and stockholders, and they both voted unanimously to form petitioner for the explained purpose.

An agreement was thereupon entered into between Gus and Composition as of May 1, 1955, under which (1) all the stock in Composition was to be transferred to a new corporation (petitioner) in exchange for 250 shares of petitioner's common stock (its total authorized and outstanding common stock), and (2) Gus' assets covered by the option were to be transferred to petitioner in return for all of petitioner's authorized and outstanding preferred (nonvoting) stock (1,250 shares, par value $100 per share). Thus, Gus was to receive preferred stock worth $125,000, the agreed value of his transferred assets.

Petitioner was formed in accordance with this agreement, with all of its preferred stock issued to and owned by Gus and all of its common stock issued to and owned by Composition. Composition then distributed such common shares to its shareholders, pro rata.

Petitioner then entered into the typesetting business previously operated by Gus. It filed its Federal corporate income tax returns

for the fiscal years ended April 30, 1956, and April 30, 1957, with the district director of internal revenue, Atlanta, Georgia, reporting the total basis of the assets acquired from Gus at $125,000, their agreed fair market value at acquisition date. Respondent has determined that such assets were received on an exchange in which no gain or loss was to be recognized and that therefore their basis in petitioner's hands is substantially less, and the same as the basis which Gus had before the transfer.

## OPINION.

This entire case turns upon whether the transaction in which petitioner acquired Gus' assets qualifies for nonrecognition of gain to the transferors of the assets under the provisions of section 351.[2] If it does, it clearly follows that petitioner obtains a "substituted" basis for the assets it acquired in such transaction. Sec. 362(a).[3]

In resisting the application of the above sections to the instant transactions petitioner necessarily recognizes that the two transferors (Gus and Composition) were in "control" (as defined by section 368(c)) of petitioner immediately after the transfer. It argues, however, that the compliance with section 351 was merely "pro forma" and was the product of "fraud" practiced upon Composition by Gus. Petitioner's position is simply that Gus and his attorneys failed to caution the Composition shareholders that the effectuation of the transfer of Gus' assets by the means here employed would result in a tax basis to petitioner lower than that obtainable had the transfer been accomplished in the fashion contemplated by the option of April 1, 1950. It claims that, in explaining the proposed transaction involving the formation of petitioner to Composition's stockholders, Gus acted fraudulently in representing to such shareholders that there would be no adverse tax consequences *to them*, and in leading them to believe that the plan was solely to prevent immediate tax liability upon Gus, but was of no significance taxwise insofar as they were concerned.

---

[2] SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.

(a) GENERAL RULE.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. * * *

SEC. 368. DEFINITIONS RELATING TO CORPORATE REORGANIZATIONS.

(c) CONTROL.—For purposes of * * * this part, the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation.

[3] SEC. 362. BASIS TO CORPORATIONS.

(a) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If property was acquired on or after June 22, 1954, by a corporation—

(1) in connection with a transaction to which section 351 (relating to transfer of property to corporation controlled by transferor) applies, * * *

* * * * * * *

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain recognized to the transferor on such transfer.

At the outset, we entertain serious doubts as to whether petitioner has demonstrated the existence of fraud on Gus' part.[4] Rather, this seems like a classic case for the application of the maxim *caveat emptor*. Composition had its own accountants and, indeed, the very proposal which its stockholders were asked to consider must have directed their attention to section 351.

However, we need not decide this question. For, reduced to simplest terms, petitioner's contention is nothing more than an argument that it should not be accorded the treatment plainly prescribed by section 362 because Composition's stockholders failed to realize (or were not informed) that a section 351 transaction necessarily brings section 362 into operation. The absurdity of such a contention is manifest.

We fail to perceive how, in any event, the "fraud" altered the substance of the transaction or made it in reality something other than a tax-free exchange under section 351. Petitioner's brief affords no help on this point. It simply states the broad general principles of "form versus substance" and relies upon *Gregory* v. *Helvering*, 293 U.S. 465 (1935). But, the nature of the corporation disregarded in the *Gregory* case was made clear by the Supreme Court's language in that case (pp. 469–470):

No doubt, a new and valid corporation was created. But that corporation was nothing more than a contrivance to the end last described. *It was brought into existence for no other purpose; it performed, as it was intended from the beginning it should perform, no other function. When that limited function had been exercised, it immediately was put to death.* [Emphasis supplied.]

Here, we are confronted with no such transient "paper" corporation but with a real functioning entity, albeit one originally created as a standard tax-saving device. Thus, even if there is fraud here, its existence is a matter foreign to the tax consequences of the instant transaction and is of no relevance to the case at hand. It is true, as petitioner urges, that the transfer of Gus' assets could just as well have been accomplished by the method originally outlined in the option—a transfer to Composition in exchange for its preferred stock. But tax consequences depend not upon what might have been done but rather upon what in substance actually was done. *Television Industries, Inc.* v. *Commissioner*, 284 F. 2d 322 (C.A. 2, 1960), affirming 32 T.C. 1297; *Byron H. Farwell*, 35 T.C. 454, 466 (1960); *Mercedes Frances Freeman Trust*, 36 T.C. 779 (1961). See also *United States* v. *Safety Car Heating Co.*, 297 U.S. 88, 98 (1936).

In *Television Industries, Inc.* v. *Commissioner*, *supra*, the Second Circuit observed (p. 325):

---

[4] There is also the consideration that the alleged "fraud" was practiced not upon petitioner but upon a different entity (Composition) or, more specifically, its stockholders.

The Commissioner is justified in determining the tax effect of transactions on the basis in which taxpayers have molded them * * *. It would be quite intolerable to pyramid the existing complexities of tax law by a rule that the tax shall be that resulting from the form of transaction taxpayers have chosen or from any other form they might have chosen, whichever is less.

Petitioner's president (who had also been president of Composition in April 1955) testified that the Composition stockholders would never have agreed to the transfer to petitioner had they known that petitioner would thereby be deprived of a stepped-up basis for the acquired assets due to the operation of sections 351 and 362. However, it is quite clear that the application of section 351 is not dependent upon whether the parties intended that a given transaction qualify under that section and thus purposely directed their transfers to further such intent. *Houck* v. *Hinds*, 215 F. 2d 673 (C.A. 10, 1954); *Pocatello Coca-Cola Bottling Co.* v. *United States*, 139 F. Supp. 912 (D. Idaho 1956).

Since the transaction here was precisely in accordance with section 351, we must conclude that the transaction resulted in nonrecognition of gain or loss, and it follows that petitioner's basis for its assets acquired in the transaction must be that of its transferor. Sec. 362. We decide this issue for respondent.

To effect stipulated concessions,

*Decision will be entered under Rule 50.*