Roy G. Andersen and Nancy R. Andersen v. Commissioner.
Andersen v. Commissioner
Docket No. 91265.
United States Tax Court
T.C. Memo 1964-98; 1964 Tax Ct. Memo LEXIS 237; 23 T.C.M. (CCH) 589; T.C.M. (RIA) 64098; April 16, 1964
William B. Murray, 525 Failing Bldg., Portland, Ore., for the petitioners. Norman H. McNeil, for the respondent. FAY
Memorandum *240 Findings of Fact and Opinion FAY, Judge: The Commissioner determined a deficiency in petitioners' income tax for the year 1958 in the amount of $22,054.71. The only issue for decision is whether the liquidation of Andersen Machinery, an Oregon corporation, resulted in the recognition of a long-term capital gain to petitioners. Findings of Fact Some of the facts have been stipulated and are so found. Petitioners, Roy G. Andersen (hereinafter sometimes referred to as Roy) and Nancy R. Andersen (hereinafter sometimes referred to as Nancy), are husband and wife with their residence at 3305 Mt. Acadia Boulevard, San Diego, California. They filed their joint income tax return for the taxable year 1958 with the district director of internal revenue at Los Angeles, California. Andersen Machinery (hereinafter referred to as Oregon) was an Oregon corporation incorporated on August 14, 1947. It used a fiscal year ending June 30. Its main office was located in Portland, Oregon. Oregon was incorporated for the purpose of engaging in the business of renting heavy equipment to building contractors on a daily basis. Oregon was actively engaged in the rental business from its date of incorporation *241 until October 1957, at which time it sold all its operating assets, including its furniture and fixtures, to Nelson Equipment Co., Inc. (hereinafter referred to as Nelson), another Oregon corporation engaged in a similar business. Thereafter, and until its final liquidation on June 26, 1958, Oregon conducted no business. At all times material herein, Roy and Nancy were members of the board of directors of Oregon; Roy was president of Oregon, while Nancy was secretary and treasurer. Roy and Nancy owned all of the capital stock of Oregon. Andersen Machinery Company (hereinafter referred to as Washington) is a Washington corporation incorporated on December 27, 1948. It uses a fiscal year ending November 30. Its main office is located in Vancouver, Washington. Washington was incorporated for the purpose of engaging in the business of renting heavy equipment to building contractors on a long-term basis. Sometime prior to November 30, 1957, Washington ceased its business activity of renting heavy equipment. During its fiscal year ended November 30, 1958, Washington sold its equipment to Nelson. Thereafter, Washington has not engaged in the business of renting heavy equipment. At all *242 times material herein, Roy and Nancy were members of the board of directors of Washington; Roy was president of Washington, while Nancy was secretary and treasurer. Roy and Nancy owned 2190 of the 2200 shares of capital stock issued and outstanding. In the fall of 1957, Roy determined that in view of the increasing competition Oregon was receiving, the company would begin to lose money during the winter of that year. A decision was made at that time to sell the operating assets of Oregon to Nelson, which was the company giving Oregon the strongest competition. Roy owned 49 percent of the stock of Nelson. Oregon agreed not to compete with Nelson in either of the States of Oregon or Washington. A decision was made to merge Oregon into Washington so as to reduce the paper work involved with two corporations and for the additional reason to enter the building field in Vancouver, Washington, by developing 83 acres of land owned by Roy. The minutes of the regular meeting of the stockholders and board of directors of Washington, dated January 6, 1958, stated: It was moved by R. G. Andersen that Andersen Machinery be merged with Andersen Machinery Company and that the Board of Directors *243 be instructed [1] to take such action as may be deemed proper and advisable to effect such merger, which motion was duly seconded and, upon vote being taken, said motion carried unanimously. The minutes of the regular meeting of the stockholders and board of directors of Oregon dated March 3, 1958, carried identical language. Prior to the dissolution of Oregon and while the company was actively engaged in business, the daily operations were under the supervision of a manager for the reason that Roy was residing in California. During this time Roy withdrew cash from Oregon and deposited it in an account entitled "R. G. Andersen, Trustee," at the Security. Trust and Savings Bank of San Diego, California. By June 26, 1958, the date of dissolution of Oregon, Roy had withdrawn $155,247.82. Roy had full use of these funds. At the date of dissolution the $155,247.82 which had been withdrawn by Roy in cash then consisted of the following assets: Cash
$ 39,850.02
401 N.W. 4th Ave., Portland,
Oregon
36,221.70
Loans to: Burgener Tavares Construction
Co.
36,492.00
E. H. White
17,581.51
Nelson Equipment Co.
25,102.59
$155,247.82
*244 Roy did not give Oregon any notes or other evidence of indebtedness for the cash withdrawals. Nor did he pay any interest to Oregon. Title to the property at 401 N.W. 4th Ave., Portland, Oregon, is recorded in the names of Roy and Nancy without restriction. The taxes on said property are assessed to Roy and Nancy. Oregon also maintained an account in the U.S.National Bank, Portland, Oregon. This account was not closed on June 26, 1958. The account remained open after Oregon's dissolution and was used by Roy to supply funds for loans to various persons and for the deposit of moneys received as repayment of loans made by Roy. This account in the name of Oregon was still active on March 31, 1960. As of June 19, 1958, there were 900 shares of common stock issued and outstanding in Oregon, said shares being represented by five certificates issued at the time of incorporation. Said shares were endorsed in blank and were owned by Roy and Nancy. A sixth certificate for 900 shares, bearing date of June 19, 1958, is contained in the stock record books of Oregon showing Washington as the owner. This certificate and the stub attached to it do not bear any documentary stamp nor do they bear *245 any date of delivery to Washington. The original certificates do not indicate that they were transferred to Washington. All the certificates are marked "cancelled." The date the word "cancelled" was placed thereon is not indicated. On June 24, 1958, Oregon prepared and on June 26, 1958, filed with the Office of the Corporation Commissioner of the State of Oregon, Articles of Dissolution. The Articles stated that "All remaining property and assets of the corporation have been distributed among its shareholders, in accordance with their respective rights and interests." Also prepared on June 24, 1958, and filed on June 26, 1958, was a Statement of Intent to Dissolve Oregon. This Statement contained the following paragraph: FOURTH: The following written consent to dissolution of the corporation has been signed by all of the shareholders of the corporation, or signed in their names by their respective attorneys thereunto duly authorized: I.R.G. Andersen, consent to the dissolution of Andersen Machinery. [Signed] R. G. Andersen I. N. R. Andersen, consent to the dissolution of Andersen [Signed] N. R. Andersen The Corporation Commissioner, on June 26, 1958, certified that *246 Oregon was dissolved. On June 26, 1958, Form 966, the information return required to be filed with the Internal Revenue Service upon the adoption of a resolution to dissolve, prepared by Oregon, was received in the district director's office at Portland, Oregon. Oregon submitted its final return for the fiscal year ended June 30, 1958. The question, "Did any corporation, individual, partnership, trust, or association at any time during the taxable year own 50 percent or more of the corporation's voting stock?" appearing on page 1 of the corporation income tax form, was answered, "Yes. Roy G. & Nancy R. Andersen acquired all stock 8/14/47." The balance sheet of Oregon as of the date of dissolution was as follows
*03*Assets Cash $ 1,017.55
Deposit in Trust 155,247.82
Accounts Receivable: Oreseco 3,007.76
Nelson Equip. Co. 8,753.85
Prepaid Insurance 1,164.08 $169,191.06
*03*Liabilities and Capital
Taxes: Federal $41.74
State 88.20
Total Liabilities $ 129.94
Capital Stock 90,000.00
Surplus 79,061.12 $169,191.06 Roy and Nancy's cost basis in the Oregon stock was $90,000. The amount of net assets available for distribution upon dissolution of Oregon was $169,350.92, *247 [2] of which Roy already had in his possession and control $155,247.82. The stock record book of Washington contains certificate No. 6 for 80 shares in the name of Roy, and certificate No. 7 for 100 shares in the name of Nancy. These certificates contain the proper documentary stamps. The certificates bore a date of issuance of June 30, 1958. On each certificate the day of the month was altered by the insertion of the number "2" over the number "3". This alteration of the issuance date was committed by Roy subsequent to June 30, 1958. Washington's corporation income tax return for its fiscal year ended November 30, 1958, shows an increase in its capital stock account over the preceding year's figures in the amount of $169,061.12. The explanation for this appearing on the return is as follows: Andersen Machinery Co. exchanged its shares for all of the shares of Andersen Machinery, an Oregon corporation. The question, "Did the corporation at any time during the taxable year own 50 percent or more of the voting stock of a domestic corporation?" appearing on page 1 of Washington's return for its fiscal year ended *248 November 30, 1958, was answered, "No." Roy and Nancy were the owners of all of Oregon's stock on June 26, 1958, the date of Oregon's liquidation. Oregon did not transfer any assets to Washington upon its liquidation. Roy and Nancy, on or before June 30, 1958, did not transfer substantially all of the assets received from Oregon to Washington, nor did Roy hold substantially all of the assets of Oregon in trust for Washington. As late as March 31, 1960, Roy still had not transferred substantially all of the assets received from Oregon to Washington. Opinion Petitioners contend that they exchanged their stock in Oregon for stock in Washington on June 19, 1958, and that it was a nontaxable exchange under section 351(a) [3] of the Internal Revenue Code of 1954. [4] It is their contention that at the time Oregon was dissolved, they were not stockholders of Oregon and as such they did not realize and therefore did not recognize any gain on the dissolution of Oregon. They further contend that if section 351 does not apply, then a reorganization took place as defined in section 368(a)(1)(A) or (B), [5] with the result that no gain or loss was recognized by them, *249 presumably by reason of section 354(a)(1). [6] Respondent, on the other hand, contends that the liquidation of Oregon is controlled by section 331(a)(1)[7] and accordingly petitioners, being the stockholders at the date of dissolution, have realized a capital gain which must be recognized. Respondent further points out that section 351 does not apply and that the series of steps taking place at the time of Oregon's dissolution does not amount to a statutory reorganization as defined in section 368(a)(1). [8]
*250 The record before us leaves much to be desired. In arriving at our decision, we have pieced together the little evidence presented the best we could, keeping in mind that the burden of proof is on petitioners. It is not unusual in cases such as this to find the taxpayer arguing that a reorganization did not take place and to find the respondent arguing that the claimed liquidation was in reality part of a reorganization. See Joseph C. Gallagher, 39 T.C. 144 (1962). Our determination of the substantive question is not controlled by whether it is more advantageous tax-wise to have a reorganization or not. Rather, the issue is determined by the facts of the particular case when considered in the light of existing law. See Lewis v. Commissioner, 176 F. 2d 646 (C.A. 1, 1949), affirming 10 T.C. 1080 (1948). Respondent has determined that petitioners realized a long-term capital gain of $79,350.92 [9] on the dissolution and liquidation of Oregon. Petitioners have the burden of proof to overcome the respondent's determination, which is presumptively correct. Missisquoi Corporation, 37 T.C. 791 (1962). Petitioners' prime contention *251 is that they were not the owners of Oregon's stock at its dissolution, that they did not receive any distribution in liquidation of Oregon and that they exchanged their stock in Oregon for additional stock in Washington on June 19, 1958. They then proceed to claim that the exchange of stock falls squarely within section 351(a) and, accordingly, no gain or loss is recognized on the exchange. Respondent does not contest that if there were an exchange of Oregon's stock for Washington's stock on June 19, 1958, as claimed by petitioners, the transaction would fall within the letter of the statute. [10] Respondent's claim is that the facts do not support an exchange of Oregon's stock for Washington's stock. We are compelled to agree with respondent. *252 The only evidence in the record indicating that petitioner's shares in Oregon were exchanged for additional shares in Washington on June 19, 1958, is the stock record book of Oregon. The stock record book contains certificate No. 8 for 900 shares made out to Washington and dated June 19, 1958. Apart from this, the record is silent as to whether petitioners actually exchanged their shares. On the other hand, the record does contain factors indicating that an exchange of shares, though contemplated at one time, did not, in fact, ever occur. We will now proceed to discuss each such factor separately. First. Petitioners admit that prior to June 19, 1958, they were the owners of all of the outstanding stock of Oregon. This ownership was evidenced by five certificates of stock totaling 900 shares. These certificates do not bear any date indicating they were delivered to Washington and then turned into Oregon for the new certificates. Second. The new certificates in the name of Washington do not contain the required revenue stamps. [11] Even though the absence of the stamps does not invalidate the certificates, Dellert v. Stallman, 29 F. 2d 236 (C.A. 7, 1928), it does indicate *253 that a transfer of shares did not take place. The fact that all Washington shares ever issued contain the necessary stamps clearly indicates that petitioners were aware of the necessity of such stamps in case of transfer of shares. Third. The fact that the Washington certificates, Nos. 6 and 7, made out to petitioners were originally dated June 30, 1958, and then subsequently altered by Roy to *254 give the appearance of being issued on June 20, 1958, casts further doubt on the merits of petitioners' argument. Fourth. Oregon was dissolved on June 26, 1958. If Washington were the owner of Oregon's stock at this date, as claimed by petitioners, then Washington would be required to consent to the dissolution. However, the Statement of Intent to Dissolve was signed by the petitioners as the sole stockholders of Oregon without any indication that they were signing as the principal officers of Washington. Fifth. Furthermore, if Washington owned all of Oregon's stock at the date of the latter's dissolution, presumably Oregon was dissolved under the provision of section 332 so as not to recognize any gain to Washington on the dissolution. If this were the case, Washington's return for its fiscal year ended November 30, 1958, would be required to contain certain information pursuant to section 1.332-6, Income Tax Regs. No such information was submitted with Washington's return. Sixth. When petitioners made out and submitted Oregon's final return, the question, "Did any corporation, individual, partnership, trust, or association at any time during the taxable *255 year own 50 percent or more of the corporation's voting stock?" was answered, "Yes. Roy G. & Nancy R. Andersen acquired all stock 8/14/47." If petitioners did exchange their stock on June 19, 1958, then Washington's name also should have been included as a 50 percent or more stockholder. Seventh. On Washington's return for its fiscal year ended November 30, 1958, the question, "Did the corporation at any time during the taxable year own 50 percent or more of the voting stock of a domestic corporation? was answered, "No." Once again, if petitioners did exchange their stock on June 19, 1958, Washington would have owned 100 percent of a domestic corporation during its fiscal year ended November 30, 1958. Accordingly, the answer to the question should have been, "Yes." While each aforestated factor taken alone does not establish that there was not an exchange of stock, all the factors taken together, with the additional element of the burden of proof, indicates to us, and we have so found, that petitioners did not exchange their stock in Oregon for additional stock in Washington on June 19, 1958, and that on the date of liquidation and dissolution of Oregon, petitioners were the sole *256 stockholders of Oregon. Cf. Charles R. Mathis, Jr., 19 T.C. 1123 (1953). Petitioners, as an alternative position, argue that if an exchange of stock did not take place, then a reorganization was effected under the provisions of section 368(a)(1)(A) or (B). Though not contained in their brief, it is presumed that petitioners rely upon section 354(a)(1) to prevent their recognition of gain on the entire transaction. Respondent counters with the argument that the series of events present here do not qualify under any of the statutory definitions of reorganization. We agree with respondent. For a merger to be considered a form of reorganization it must be effected pursuant to State law. Section 1.368-2(b), Income Tax Regs. There was no merger pursuant to the corporation laws of the States of Washington or Oregon when Oregon was liquidated. The merger statutes of both States [12] provide for detailed procedures to be followed in order to effect a merger. Both States require the filing with either the Corporation Commission or the Secretary of State of a *257 detailed agreement or articles of merger. The State of Washington requires stockholders' approval at a meeting called especially for that purpose. There was absolutely no evidence introduced by petitioners to show compliance with the State statutes. All we have are the minutes of both corporations indicating that early in 1958 the stockholders and board of directors decided to merge the two corporations. This fact alone does not, in our opinion, constitute a statutory merger as contemplated by section 368(a)(1)(A). See Edward H. Russell, 40 T.C. 810 (1963), on appeal (C.A. 5, Dec. 3, 1963).
There is also no merit to petitioners contention that a reorganization under section 368(a)(1)(B)[13] took place. In order for a transaction to qualify as a subsection (B) reorganization, there must be an acquisition by the acquiring corporation of the stock of another corporation solely in exchange for part or all of the voting stock of the acquiring corporation and the acquiring corporation must be in control of the other corporation immediately after the acquisition. *258 What we said regarding petitioner's argument in reference to the applicability of section 351 also applies here. Washington did not acquire the stock of Oregon solely in exchange for its voting stock. Washington never acquired the stock of Oregon. It may have acquired some of Oregon's assets in exchange for its voting stock, but we have found as a fact that Roy and Nancy did not exchange their stock in Oregon for stock in Washington. Oregon was liquidated on June 26, 1958, at a time when Roy and Nancy were the sole stockholders. Accordingly, the requirements of section 368(a)(1)(B) have not been met. The fact that substantially all of the assets of Oregon were not transferred to Washington prevents the transaction from qualifying as either a subsection (C) or subsection (D) reorganization. [14] Roy, at the time of Oregon's dissolution, had $155,247.82 of Oregon's assets in his possession. Of this amount approximately $36,000 was invested in real property, title being in Roy's and Nancy's names, and approximately $79,000 had been loaned to other parties. There is no evidence in the record indicating that any part of Oregon's assets was physically turned *259 over to Washington on June 30, 1958. Roy testified that subsequent to June 30, 1958, Oregon's cash was turned over to Washington and that the notes representing the loans made by Roy were assigned to Washington. The checking account of Oregon, containing a sizable balance, was still open and active at late as March 31, 1960. The land was still in Roy's name as late as the date of trial, October 7, 1963. These facts indicate to us that substantially all the assets of Oregon were not and have not been transferred to Washington pursuant to a plan of reorganization. The other two forms of permissible reorganization are not applicable to this factual situation. [15] In view of our holding, it is not necessary for us to discuss respondent's position regarding the absence of a "business purpose" to this series of events. Since we have found *260 as a fact that petitioners did not exchange their stock in Oregon for additional stock in Washington in a transaction falling within section 351 and since petitioners have failed to establish that the liquidation and dissolution of Oregon were part of a tax-free reorganization, respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. The minutes of the board of directors used the words, "the officers be directed" instead of "the Board of Directors be instructed."↩
2. This figure was arrived at by stipulation of the parties.↩
3. SEC. 351. TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR. (a) General Rule. - No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c) of the corporation. * * * Section 368(c) provides: (c) Control. - * * * the term "control" means the ownership of stock possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and at least 80 percent of the total number of shares of all other classes of stock of the corporation. ↩
4. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954. ↩
5. SEC. 368. DEFINITIONS RELATING TO CORPORATE ORGANIZATIONS. (a) Reorganization. - (1) In General. - For purposes of * * * this part, the term "reorganization" means - (A) a statutory merger or consolidation; (B) the acquisition by one corporation, in exchange solely for all or a part of its voting stock, of stock of another corporation if, immediately after the acquisition, the acquiring corporation has control of such other corporation (whether or not such acquiring corporation had control immediately before the acquisition); ↩
6. SEC. 354. EXCHANGES OF STOCK AND SECURITIES IN CERTAIN REORGANIZATIONS. (a) General Rule. - (1) In General. - No gain or loss shall be recognized if stock or securities in a corporation a party to a reorganization are, in pursuance of the plan of reorganization, exchanged solely for stock or securities in such corporation or in another corporation a party to the reorganization. ↩
7. SEC. 331. GAIN OR LOSS TO SHAREHOLDERS IN CORPORATE LIQUIDATIONS. (a) General Rule. - (1) Complete Liquidations. - Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock. ↩
8. SEC. 368. DEFINITIONS RELATING TO CORPORATE ORGANIZATIONS. (a) Reorganization. - (1) In General. - For purposes of * * * this part, the term "reorganization" means - (A) [see footnote 5, supra] (B) [see footnote 5, supra] (C) the acquisition by one corporation, in exchange solely for all or a part of its voting stock (or in exchange solely for all or a part of the voting stock of a corporation which is in control of the acquiring corporation), of substantially all of the properties of another corporation, but in determining whether the exchange is solely for stock the assumption by the acquiring corporation of a liability of the other, or the fact that property acquired is subject to a liability, shall be disregarded; (D) a transfer by a corporation of all or a part of its assets to another corporation if immediately after the transfer the transferor, or one or more of its shareholders (including persons who were shareholders immediately before the transfer), or any combination thereof, is in control of the corporation to which the assets are transferred; but only if, in pursuance of the plan, stock or securities of the corporation to which the assets are transferred are distributed in a transaction which qualifies under section 354, 355, or 356; (E) a recapitalization; or (F) a mere change in identity, form, or place of organization, however effected.↩
9. The amount of the gain, having been stipulated to by the parties, is not in dispute. ↩
10. The respondent concedes, as he must, that petitioners were in "control" of Washington as that term is used in sec. 351 and defined in sec. 368(c). See footnote 3, supra. Furthermore, it is conceded by respondent in brief that "stock" can be considered "property" for the purpose of sec. 351. See Gus Russell, Inc., 36 T.C. 965↩ (1961).
11. SEC. 4321. IMPOSITION OF TAX. There shall be imposed a tax on each sale or transfer of shares or certificates of stock, or of rights to subscribe for or to receive such shares or certificates, issued by a corporation, at the following rates: (1) Par-Value Stock. - Five cents on each $100 or fraction thereof of the par or face value of each certificate (or of the shares where no certificate is sold or transferred), except as provided in paragraph (3). (2) No-Par Value Stock. - Five cents on each share, except as provided in paragraph (3). (3) Exception. - In the case of a sale at $20 or more per share, the rate provided in paragraphs (1) and (2) shall be 6 cents in lieu of 5 cents.↩
12. Revised Code of Washington, sec. 23.01.470. Oregon Revised Statutes, secs. 57.455, 57.470 and 57.485↩.
13. See footnote 5, supra.↩
14. See footnote 8, supra. The requirement that substantially all of the assets must be acquired in a subsection (D) reorganization is made mandatory in this case by sec. 354(b)(1)(A). See Edward H. Russell, 40 T.C. 810, 823↩ (1963), on appeal (C.A. 5, Dec. 3, 1963).
15. Sec. 368(a)(1)(E) and (F)↩. See footnote 8, supra.